**BLACKMAN et v CINCINNATI (city)**

Common Pleas Court, Hamilton Co.

No. A-69178. Decided June 6, 1940.

Harmon, Colston, Goldsmith & Hoadly, and Harold K. Goldstein, Cincinnati, for plaintiffs-appellants.

John D. Ellis, city solicitor and John J. Dreyer, asst. city solicitor, Cincinnati, for defendant-appellee.

## OPINION

By SCHWAB, J.

This is an appeal on question of law arising in the Municipal Court of Cincinnati, wherein at the conclusion of the plaintiffs' case the court below directed the jury to return a verdict in favor of the defendant, the city of Cincinnati.

The facts in the trial of the case disclosed that on or about the 16th day of June, 1937, the plaintiff, Nathan Blackman, was operating his automobile, a 1936 Plymouth De Luxe touring sedan, near the intersection of the Parkway and Race street, in the city of Cincinnati; that at that time and place Ansley Sherer, a policeman of the Cincinnati Police Department, stopped the plaintiff, climbed into his machine and ordered the plaintiff to chase an automobile which had come out of the alley and started down the parkway, asserting at the time that there had been a shooting. The plaintiff drove his car, as requested by the police officer, in pursuit of the car. At the corner of Race and Elder streets, by reason of the slippery condition of the pavement, the car skidded into a truck and was damaged. It was for this damage that this action was brought against the city of Cincinnati, upon the theory that the city of Cincinnati, acting through the police officer, had exercised its right of eminent domain to acquire private property for public use.

Upon motion of the defendant at the conclusion of the plaintiff's testimony, the trial court ruled that in his opinion the police officer at the time in ques-

126

tion was acting as an agent of the state of Ohio, and that therefore the city of Cincinnati was not liable, and accordingly directed the jury to return a verdict in favor of the city.

It is urged upon this court that under the provisions of the federal and state Constitutions the taking of private property for public use by the state or any of its political subdivisions can not be done without compensating the owner of such property. However, examining the facts of this case, the court reaches the conclusion that the police officer, at the time in question, was acting under the authority conferred upon police officers by the provisions of §12857 GC, which reads as follows:

"Whoever, when called upon by a sheriff, coroner, constable or other ministerial officer to assist in apprehending a person charged with, or convicted of, a criminal offense, or in securing such person when so apprehended, or in conveying him to prison, neglects or refuses so to do, shall be fined not more than fifty dollars."

It is suggested by counsel for the plaintiff that the officer was acting under the provisions of this section of the law. It will be observed that this section makes it an offense to refuse to assist an officer in apprehending a person charged wth, or convicted of, a criminal offense.

The record in this case is silent upon the question of whether or not the individual or individuals whom the police officer was pursuing had been charged with any offense, or had been convicted of any offense.

The court therefore reaches the conclusion that the police officer, under this section, had no authority to command the plaintiff to pursue the other car.

This particular section of the General Code was before the Supreme Court in the case of The Industrial Commission of Ohio v Turek, 129 Oh St 545, 2 OO 550, the third syllabus reading as follows:

"Under the provisions of §12857 GC, anyone may be called upon by a sheriff, coroner, constable or other ministerial officer to assist in apprehending a person charged with, or convicted of, a criminal offense, or in securing such person when so apprehended, or in conveying him to prison, but not otherwise."

After quoting this section, the court, on page 549, has this to say in its opinion:

"The plaintiff cites several cases upon which he relies. However, a study of them clearly demonstrates the inapplicability of this statute to the situation in the instant case. Patently, this plaintiff was not summoned by the traffic patrolman 'to assist in apprehending a person charged with, or convicted of, a criminal offense, or in securing such person when so apprehended, or conveying him to prison.' No one had been convicted of, or even charged with, a crime. From this simple language it is evident that the statute was enacted for the purpose of enabling an officer to obtain immediate assistance when suddenly confronted with a dangerous emergency in apprehending, securing or conveying a person charged with or convicted of, a crime."

Sec. 13432-1 GC, provides as follows:

"A sheriff, deputy sheriff, marshal, deputy marshal, watchman or police officer, herein designated as 'peace officers' shall arrest and detain a person found violating a law of this state, or an ordinance of a city or village, until a warrant can be obtained.

"A constable within the limits of the township in which said constable has been appointed or elected, shall arrest and detain a person found by him in the commission of a misdemeanor, either in violation of a law of this state or an ordinance of a village, until a warrant can be obtained."

Under the provisions of this section it was the duty of the police officer to

arrest a person violating a law of this state or an ordinance of the city.

Sec. 13432-2 reads as follows:

"When a felony has been committed, or there is reasonable ground to believe that a felony has been committed, any person without a warrant may arrest another whom he has reasonable ground to believe is guilty of the offense, and detain him until a warrant can be obtained."

Under the provisions of this section any citizen may make an ▮▮▮▮▮▮▮ ▮ arrest where a felony has been committed, or there is reasonable ground to believe that a felony has been committed. This section imposes no duty upon the citizen to make an arrest, but it has conferred upon the citizen the right to make an arrest.

The court, therefore, is of the opinion that when the police ▮▮▮▮▮▮ ▮ officer commanded the citizen to drive his car in pursuit of one whom he had reasonable ground to believe had committed a felony, as the facts in this case indicate, he was calling upon the citizen to exercise the privilege which the law conferred upon the citizen, and was not, in the opinion of this court, acting on behalf of the city as its agent in appropriating private property for public use.

For these reasons the court is of the opinion that the trial court was right in directing a verdict in favor of the defendant, the city of Cincinnati.

Courts are established to enforce the law and not to make it. However, the court can not refrain from applauding the conduct of the plaintiff in this case in assisting the police department, or attempting to assist the police department in the suppression of crime, and to call attention to the need of legislation on the part of the city of Cincinnati to encourage its citizens to cooperate with its police department by ordinances which would assume liability on the part of the city, where damage has resulted to the citizen by reason of such cooperation.

As above stated, the judgment of the Municipal Court will be affirmed.